MERRITT, J., delivered the opinion of the court, in which CLAY, J., joined. BOGGS, J. (pp. 446-51), delivered a separate dissenting opinion.
*443 OPINION
MERRITT, Circuit Judge.
This is a direct appeal from conviction after a guilty plea entered by defendant Michael Jackson to one count of intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The presentencing report provided a sentencing range of 188-235 months due to Jackson’s status as a career offender. The district court agreed to delay Jackson’s sentencing in anticipation that Congress would pass legislation reducing the penalties associated with the crack cocaine laws. The case is governed, and we are bound, by the recent case of Freeman v. United States, — U.S. -, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011).
After waiting more than a year after Jackson entered his guilty plea in June 2009, the district court decided it could wait no longer and sentenced Jackson on July 16, 2010:
[W]e waited and waited and waited to see if Congress would change the guidelines, or the statutes, with regard to crack versus powder cocaine. My information now indicates that it’s a dead issue in Congress and that it’s not going to change, at least in the foreseeable future.....I was trying to give you the benefit of any change in the law that might occur, and it doesn’t appear that it’s going to. For that, I’m sorry....
Sentencing Tr. at 16. The district court did not apply the “career offender” guideline sentence and sentenced Jackson to 150 months. This sentence was below the advisory guideline range for a career offender and within the old advisory guideline range for crack cocaine violations that would have otherwise applied to Jackson if he were not a career offender. Jackson filed a timely notice of appeal on July 26, 2010. On August 3, 2010, less than three weeks after Jackson was sentenced, the Fair Sentencing Act was signed into law and the ratio for crack versus powder cocaine was reduced from 100:1 to 18:!.[1] The Sentencing Commission promulgated emergency amendments to the sentencing guidelines, which became effective immediately, and other amendments were later promulgated that made the reduced guideline ranges for crack cocaine permanent and retroactive on November 1, 2011. See *444 U.S.S.G.App. C-Vol. Ill, Amend. 750 (effective Nov. 1, 2011) and Amend. 759 (making Amend. 750 retroactive effective Nov. 1, 2011).
On appeal, defendant seeks a remand to the district court for resentencing in light of the reduction in sentences under the crack cocaine guidelines issued by the Sentencing Commission and made retroactive during the pendency of his appeal. The government and the dissent contend that defendant is not eligible for any reduction because his sentence was “based on” the career offender guidelines and not the crack cocaine guidelines. The determination of whether an original sentence was “based on” a sentencing range that was subsequently lowered by the Sentencing Commission is a matter of statutory interpretation that we review de novo.
We recognize that the defendant’s criminal history required the district court to consider the career offender guidelines, but in deciding whether the now-amended and retroactive crack cocaine guidelines apply to defendant, we focus on the range that was actually applied to the defendant in this ease. To do otherwise is to impose a harsh sentence on defendant when the severity of the old guidelines has been criticized by nearly every stakeholder in the criminal justice system, as well as by Congress. It is clear in this case that the sentencing court agreed when it took into consideration the fact that the old crack cocaine guidelines were too harsh and would likely be amended. We now give the district court the opportunity to revisit the sentence in light of the newly retroactive guidelines.
I.
When the original sentencing judge decides to vary from the career offender guideline range to some other range, it is fair to say that the sentence imposed is “based on” the adopted range and not the career offender range. At least two ranges are in play, and it is a fiction to look at the sentence and say only one range exists. And where, as here, the sentencing judge made clear his disagreement with the crack cocaine guidelines then in effect, the opportunity to resentence is warranted in light of the revised, and now-retroactive, guidelines.
A review of the transcript demonstrates that the district court granted Jackson a downward variance of 38 months from the career offender guideline applicable to him based on the “untenable” disparity in the crack versus powder cocaine sentences. Sentencing Tr. at 16 (July 16, 2010) (“I ... am willing to take into consideration the fact that you find yourself in a crack versus powder cocaine disparity that I believe, and I think any [rationalj-thinking person believes, is untenable, that it really doesn’t have any empirical support.”). The sentence fell within the upper end of the advisory range (121-151 months) that would have applied to Jackson under the crack cocaine guidelines if he were not a career offender.
The district court varied downward from the career offender guideline to a sentence it believed was more reasonable based on the crack versus powder disparity — at least as far as we can tell from the transcript. The court mentioned no other reason that could account for the 38-month downward variance in the ultimate sentence. Jackson’s sentence was “based on” the range produced by subtracting three levels from the career offender guideline. The district court rejected the career guideline range in favor of something else. The only “something else” he mentioned at the sentencing hearing was the “untenable” disparity in crack versus powder sentencing. Although we cannot know exactly how the court would have sentenced Jack *445 son had the revised guidelines been in place in July 2010, the court expressed its desire to use the lower range in sentencing Jackson.
If a sentencing judge, having found a defendant to be a career offender, then decides to sentence defendant below the range for career offenders and notes his policy disagreement with the crack cocaine guidelines, ordinary review would say that the sentence was as much “based on” the crack cocaine guidelines as the career offender guidelines. See United States v. Swint, 442 Fed.Appx. 614, 616 (2d Cir.2011). Accordingly, the crack cocaine guideline ranges, which were lowered by the Sentencing Commission and made retroactive during the pendency of Jackson’s direct appeal, make defendant eligible for resentencing at the district court’s discretion. Any other reading is contrived.
The government and the dissent take the position that the applicable range is solely the career offender range because the defendant was eligible for sentencing pursuant to that range. They fail to explain why that reading is more natural than the other, more lenient, reading, especially where the Commission has repeatedly stated that the disparity between powder and crack cocaine overstates the dangers posed by crack. We reject the continued formalistic application of the now-advisory guidelines and decline to adopt the narrow approach that would categorically deny a defendant the benefit of a sentencing reduction based on a retroactive amendment to the guidelines. We leave it to the district court to decide whether the retroactive guidelines should play a part in the sentencing of Jackson.
II.
We also follow the explicit language in Freeman v. United States, — U.S.-, 131 S.Ct. 2685, 2692-93, 180 L.Ed.2d 519 (2011), that instructs us to
isolate whatever marginal effect the since-rejected Guideline had on the defendant’s sentence. Working backwards from this purpose, § 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence.
“Working backward,” the crack cocaine guidelines were clearly “a relevant part of the analytic framework” used by the district court to determine Jackson’s ultimate sentence. There is no language in Justice Sotomayor’s concurring opinion that would distinguish this case from the Freeman case. The unenhanced crack guidelines were “a relevant part of the analytic framework the judge used to determine the sentence.” The district court’s comments from the sentencing hearing reveal that Jackson’s sentence was plainly “based on,” at least in part, the crack guidelines. See United States v. Rivera, 662 F.3d 166, 173-75 (2d Cir.2011).
Section 1B1.10 of the Sentencing Guidelines does not mandate that Amendment 750 be applied retroactively, but it gives the sentencing court the discretion to apply it. Because the issue was raised on direct appeal and Amendment 750 was made retroactive during the pendency of the appeal, we remand the case to the district court to allow it in the first instance to consider whether, in the exercise of its discretion, the revised and retroactive crack cocaine guidelines should be considered in determining Jackson’s sentence. See United States v. Coohey, 11 F.3d 97, 101 (8th Cir.1993).[2] For purposes *446 of judicial efficiency, we affirm but remand to the district court for the opportunity to consider the retroactive crack cocaine guidelines sua sponte without the necessity of Jackson filing a motion pursuant to 18 U.S.C. § 3582(c). We take no position as to whether any change in Jackson’s sentence is warranted due to the retroactive crack cocaine guidelines.
For the foregoing reasons, we remand the case to the district court consistent with this opinion.

. The Fair Sentencing Act, enacted on August 3, 2010, increased the amount of crack cocaine necessary to trigger mandatory minimum sentences. Section 8 of the Fair Sentencing Act directs the United States Sentencing Commission to:
(1) promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the enactment of this Act, in accordance with the procedure set forth in section 21(a) of the Sentencing Act of 1987 (28 U.S.C. § 994 note), as though the authority under that act had not expired; and (2) pursuant to the emergency authority provided under paragraph (1), make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law.
124 Stat. 2372, 2374 (2010).
In accordance with the above directive, the Sentencing Commission issued an emergency amendment to the United States Sentencing Guidelines, effective November 1, 2010, that amended § 2Dl.l(c)’s drug quantity table and reduced the base offense level for various quantities of crack cocaine. Temporary Emergency Amendment to Sentencing Guidelines, 75 Fed.Reg. 66, 188 (Oct. 27, 2010). After Jackson filed this appeal, the United States Sentencing Commission unanimously voted to make this amendment, now designated Amendment 750 in Appendix C of the United States Sentencing Guidelines, retroactive. U.S.S.G.App. C, Amend. 759. The effective date of Amendments 750 and 759 is November 1, 2011.

. Ordinarily, a defendant must petition the district court for modification of sentence un *446 der Section 1B1.10. See 18 U.S.C. § 3582(c)(2). However, because Jackson raised this sentencing issue on appeal and the amendments were made retroactive during the pendency of his direct appeal, we see no need to force him to take this additional step. See United States v. Wales, 911 F.2d 1323, 1328 n. 3 (9th Cir.1992).