NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0381n.06

Case No. 12-3042

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Apr 16, 2013*

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| BENJAMIN WHERRY, | ) COURT FOR THE NORTHERN |
| | ) DISTRICT OF OHIO |
| Defendant-Appellant. | ) |
| | ) |

BEFORE:  BATCHELDER, Chief Judge; MERRITT and KETHLEDGE, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge.  Benjamin Wherry was convicted in 1997 under

21 U.S.C. § 841(b)(1)(A) of possession with intent to distribute cocaine base, and under 18 U.S.C.

§ 922(g)(1) of being a felon in possession of a firearm.  He was sentenced as a career offender to 235

months' incarceration.   The district court denied his 18 U.S.C. § 3582(c)(2) motion for

reconsideration of his sentence under the new crack cocaine sentencing guidelines enacted under

Amendment 750 to the Sentencing Guidelines, holding that because Wherry was sentenced as a

career offender and not under the crack cocaine guidelines he is not eligible for reconsideration under

§ 3582(c)(2).  We AFFIRM.

I.

In 1997, Wherry's conviction for possession with intent to distribute 65.15 grams of cocaine

base in violation of  21 U.S.C. § 841(b)(1)(A) would ordinarily have been assigned a base offense

level of 32 under U.S.S.G. § 2D1.1(c)(4), with a two-level increase under 2D1.1(b)(1) for possession

of a firearm, resulting in an adjusted offense level of 34. Wherry's offense carried a statutory minimum sentence of 10 years' incarceration and a statutory maximum term of life. 21 U.S.C. § 841(b)(1)(A).

Because of prior offenses, however, Wherry was not sentenced under U.S.S.G. § 2D1.1; rather, he was sentenced as a career offender under U.S.S.G. § 4B1.1. Pursuant to § 4B1.1(b)(1), the fact that the statutory maximum for the offense was life meant that Wherry's offense level under § 4B1.1 was 37 rather than 34. But the trial court granted a 3-level reduction for acceptance of responsibility, reducing his offense level from 37 back to 34. This reduction was granted after a jury trial and conviction, and was not recommended in the pre-sentencing report. The reduction was requested and granted in this case because of what the court labeled "unique" and "rare" circumstances: Wherry had been on pretrial release for about a year and his Pretrial Services Officer had recommended that the court take into account his exemplary behavior during that time, and the career offender provision meant that in calculating the guideline sentence, the court had to begin at an offense level of 37.

Wherry's career criminal status also meant that he had a criminal history category of VI. But the court granted a one-level criminal-history category departure, to adjust for what it saw as an over-representation of criminal history, thereby reducing his criminal history category from VI to V. [*Id*. at 13-16.]

These departures resulted in a guideline range of 235 to 293 months, and the court sentenced Wherry to 235 months. The court, operating under then-mandatory sentencing guidelines, noted that the sentence required here was "particularly harsh."

2

In 2008, Wherry filed a motion for modification of his sentence under 18 U.S.C. § 3582(c)(2), seeking reconsideration under the new crack cocaine sentencing guidelines enacted under Amendment 706 to the Sentencing Guidelines, which reduced the sentencing ranges for crack cocaine offenses listed in U.S.S.G. § 2D1.1. Affirming the district court, this court held that Wherry was "not eligible for modification under § 3582(c)(2) because the application of any amendment to U.S.S.G. § 2D1.1 would not result in the lowering of his applicable guideline range" since Wherry was sentenced as a career offender. *United States v. Wherry*, No. 10-3895 (6th Cir. May 10, 2011) (citing *United States v. Williams*, 607 F.3d 1123, 1125-26 (6th Cir. 2010); *United States v. Perdue*, 572 F.3d 288, 292-93 (6th Cir. 2009)).

Wherry has now brought another § 3582(c)(2) motion, this one under Sentencing Guidelines Amendment 750, which also alters the crack cocaine sentencing ranges. In a succinct order, the district court denied the motion:

> This Court previously determined that Defendant's sentence was imposed based on the career-offender provisions found at U.S.S.G. § 4B1.1. Amendment 750 does not apply to sentences imposed under U.S.S.G. § 4B1.1. Career offenders, like Defendant, are therefore not eligible for a reduction in sentence under 18 U.S.C. § 3582(c)(2).

Wherry appeals.

## II.

We review a motion to modify a sentence under 18 U.S.C. § 3582(c)(2) for abuse of discretion. *See Perdue*, 572 F.3d at 290. However, when a district court rules that it has no authority to revisit the sentence under 18 U.S.C. § 3582(c)(2), we review that question of law de novo. *See United States v. Johnson,* 569 F.3d 619, 623 (6th Cir. 2009).

18 U.S.C. § 3582(c)(2) authorizes a district court to reconsider a defendant's sentence when (1) the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*)," and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also United States v. McClain*, 691 F.3d 774, 777 (6th Cir. 2012); *United States v. Pembrook,* 609 F.3d 381, 383 (6th Cir. 2010). The "applicable policy statement" relevant here is U.S.S.G. § 1B1.10, "Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)," which reads, in pertinent part:

> (a) Authority.--
>> (1) In General.--In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. 3582(c)(2). As required by 18 U.S.C. 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.
>>
>> (2) Exclusions.--A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if–
>>
>>> (A) None of the amendments listed in subsection (c) is applicable to the defendant; or
>>> (B) An amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range.
>
> (b) Determination of Reduction in Term of Imprisonment.--
>
>> (1) In General.--In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at

the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

(c) Covered Amendments.--Amendments covered by this policy statement are listed in Appendix C as follows: 126, 130, 156, 176, 269, 329, 341, 371, 379, 380, 433, 454, 461, 484, 488, 490, 499, 505, 506, 516, 591, 599, 606, 657, 702, 706 as amended by 711, 715, and 750 (parts A and C only).

So, a reduction is *not* consistent with Sentencing Commission policy statements and thus is not authorized if none of the "covered amendments" listed in U.S.S.G. § 1B1.10(c) is applicable to the defendant; or a "covered amendment" does not "have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2). In making this determination, "the court shall substitute *only* the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced *and shall leave all other guideline application decisions unaffected.*" U.S.S.G. § 1B1.10(b)(1) (emphasis added). Finally, the Applications Notes to § 1B1.10(a) explain that a sentence reduction will not be consistent with the policy statement where an amendment listed in subsection (c), although applicable to the defendant, does not have "the effect of lowering the defendant's applicable guideline range" under (a)(2)(B)

because of the operation of another guideline or statutory provision (e.g. a statutory mandatory minimum term of imprisonment) (i.e. the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guideline Manual or any variance).

U.S.S.G. § 1B1.10 comment (n.1(A)).

The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (FSA), was passed to reduce the disparity in sentencing between crack- and powder-cocaine offenses. Among other

changes, the Act altered the crack-to-powder ratio in 21 U.S.C. § 841(b)(1)(A), effectively altering the statutory minimum and maximum sentence for cocaine-base offenses. *Id*., § 2. The Act also authorized the Sentencing Commission to make conforming changes to the Sentencing Guidelines. *Id*., § 8. Part A of Amendment 750 to the Sentencing Guidelines effects changes only to the crack-cocaine sentencing table in U.S.S.G. § 2D1.1 and Note 10 of the Commentary to § 2D1.1. Part C of Amendment 750 involves only U.S.S.G. § 2D2.1. And Amendment 750 (parts A and C only) is listed as a covered amendment in U.S.S.G. § 1B1.10(c) for purposes of 18 U.S.C. § 3582(c)(2). But Parts A and C of Amendment 750 include only the Sentencing Commission alterations to the sentencing table in U.S.S.G. § 2D1.1; they make no reference to the FSA's statutory alterations to 21 U.S.C. § 841.

Wherry advances two arguments supporting the application of 18 U.S.C. § 3582(c)(2) to his sentence. First, the calculation of his offense level of 37 under the career offender provision is dependent on the crack cocaine statute and so his sentence is arguably "based on" both the career offender provision *and* the crack cocaine statute. Second, Wherry argues that his sentence is de facto based on the crack cocaine guidelines in U.S.S.G. § 2D1.1, citing this court's analysis in *United States v. Jackson,* 678 F.3d 442 (2012). Each of these arguments will be considered in turn.

**III.**

Wherry contends that the offense level for career offenders under U.S.S.G. § 4B1.1 is calculated using the statutory maximum assigned to the underlying offense. *See* U.S.S.G. § 4B1.1

(b).[1]  Precisely.  The court used the statutory maximum for the offense; it did *not* use the crack

cocaine sentencing table found in U.S.S.G. § 2D1.1.[2]  The statutory maximum for crack cocaine

offenses was lowered by the FSA, but U.S.S.G. Amendment 750 alters only § 2D1.1.  Wherry's

sentence, then, is not "based on a sentencing range that has subsequently been lowered by the

Sentencing Commission," and is therefore not a sentence the court is authorized to reduce under 18

U.S.C. § 3582(c)(2).  *See* U.S.S.G. § 1B1.10(a) and (c); *United States v. Tillman*, 2013 WL 150112,

*2 (6th Cir. Jan. 15, 2013) ("A defendant whose sentence is based upon the career offender

sentencing guideline cannot benefit from Amendment 750 because that amendment did not lower

the career offender sentencing guidelines range."); *United States v. Stanley,* 2012 WL 4014932, *2

(6th Cir. Sept. 13, 2012) (noting that a sentence based on a statutory minimum that had been changed

by the FSA could not be revisited under § 3582(c)(2)).  Nor does the FSA apply retroactively to a

defendant sentenced before August 3, 2010.  *Dorsey v. United States*, 132 S.Ct. 2321, 2335 (2012).

This conclusion is indistinguishable from past cases which held that U.S.S.G. Amendment

706 does not apply to career offenders because a career offender's sentence is not based on U.S.S.G.

§ 2D1.1.  *See  Williams*, 607 F.3d at 1125 (noting that defendant's sentence remained unaltered by

Amendment 750 because he was sentenced as a career offender); *Perdue*, 572 F.3d at 292 ("Perdue's

sentence was based on . . . § 4B1.1.  The alternative base offense level under § 2D1.1 ultimately did

---

[1]As already noted, the statutory maximum for the amount of cocaine base in this case was decreased by the FSA from life to 40 years.  Thus, under the new statutory provisions Wherry's offense level would have been only 34, instead of 37.

[2]Nor is a career offender sentence "based on" § 2D1.1 simply because the guidelines instruct a court to consider U.S.S.G. § 2 before considering § 4.  This argument has been expressly considered and rejected by this court.  *See Williams*, 607 F.3d at 1125 n.1; and *id*. at 1126 (Merritt, J. concurring).

not affect the calculation of the sentencing range under the career offender classification."); *United States v. Leasure*, 331 F. App'x 370, 378 (6th Cir. 2009); *see also Tillman*, 2013 WL 150112 at \*2 (applying this series of cases to Amendment 750). As explained above, this court has already found that Wherry was "not eligible for modification under § 3582(c)(2) because the application of any amendment to U.S.S.G. § 2D1.1 would not result in the lowering of his applicable guideline range." *Wherry*, No. 10-3895 (6th Cir. May 10, 2011).

This conclusion is not affected by *Freeman v. United States*, 131 S. Ct. 2685 (2011). "*Freeman* addressed only the first statutory requirement under § 3582, the 'based on' component, as it pertained to certain plea agreements. In *Dillon*, the Supreme Court took a 'narrow view of proceedings' under § 3582(c)(2). . . ." *United States v. McClain,* 691 F.3d 774, 779 (6th Cir. 2012) (internal citations omitted) (quoting *Dillon v. United States*, 130 S. Ct. 2683, 2691 (2010)).

**IV.**

In the alternative, Wherry urges that, because his adjusted offense level after the acceptance-of-responsibility reduction was comparable to the base offense level he would have received under § 2D1.1, he was de facto sentenced under § 2D1.1, like the defendant in *United States v. Jackson*, 678 F.3d 442 (6th Cir. 2012).

*Jackson* is a unique case, punctuated by anomalous factual findings that are not found here. In *Jackson*, the defendant had pled guilty to a crack cocaine offense in 2009. *Id.* at 443. The district court waited over a year to sentence Jackson, expressly waiting for new crack cocaine sentencing guidelines from Congress, but eventually imposed the sentence before those guidelines were passed. *Id.* At sentencing, although noting that the defendant qualified as a career offender, the court "did

not apply the 'career offender' guideline sentence" and "rejected the career guideline range." *Id*. at 443–444. Instead, the court gave the defendant a sentence "below the advisory guideline range for a career offender and within the old advisory guideline range for crack cocaine violations" such as the defendant's. *Id*. at 443. As this court read the record, the district court had chosen the alternative sentence after taking into consideration the "crack versus powder cocaine disparity" that the judge believed—and "any rational-thinking person believe[d]"—was "untenable." *Id.* (internal formatting removed); *see also United States v. Williams,* No. 12-3353, at *10 (6th Cir. Jan. 30, 2013) ("This court noted that the district court [in *Jackson*] varied downward based on its policy disagreement with the guidelines' disparity between sentences for crack and powder cocaine offenses. It therefore found that Jackson's sentence was 'based on' the crack cocaine guidelines. . . .").

Here, the district court applied rather than rejected the career offender guideline, explained that the offense level reduction was for acceptance of responsibility, and did not apply the crack cocaine guidelines. The career offender provision was mandatory when Wherry was sentenced, and so the district court did not have the option of rejecting it for something else. Thus, unlike *Jackson*, Wherry's sentence was based on the career offender provision and not § 2D1.1. The sentencing range under that provision was not lowered by U.S.S.G. Amendment 750 and Wherry's sentence may not be revisited.

Even if Wherry's sentence were de facto "based on" § 2D1.1, it remains clear that his "applicable guideline range" was taken from § 4B1.1. "The fact that [defendant] was sentenced below the applicable sentencing guidelines range as a result of the district court's grant of

[defendant's] request for a downward variance does not alter this result." *Tillman*, 2013 WL 150112 at *2 (citing *Pembrook*, 609 F.3d 381, 387 (6th Cir. 2010)). The policy statement commentary defines the "applicable guideline range" as the range "which is determined before consideration of any departure provision in the Guideline Manual or any variance." U.S.S.G. § 1B1.10, comment (n.1(a)). That is, the "applicable guideline range" is the pre-departure range. Here, the applicable guideline is the offense level of 37 and criminal history score of VI derived from the career offender provision before the court chose to grant any downward departures. Again, this analysis is not affected by the Supreme Court's opinion in *Freeman*. *See McClain,* 691 F.3d at 779. Because Jackson's applicable guideline range is unaltered by U.S.S.G. Amendment 750, reconsideration of his sentence under 18 U.S.C. § 3582(c)(2) would be contrary to the U.S.S.G. § 1B1.10 policy statement.

## V.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

**MERRITT, Circuit Judge, dissenting.** Benjamin Wherry, an African-American, like almost all crack defendants, was engaged in the crack cocaine trade in the 1990s and received a 20-year federal sentence, in part because of an enhancement for two prior felonies. He will not be eligible for release from prison until 2017, unless we allow the lower court to consider him for release under the new Fair Sentencing Act of 2010, and its guidelines, which substantially reduce crack cocaine sentences. The new Act was adopted by Congress after considering testimony of many witnesses and reports that the old crack cocaine sentencing system that reigned for 25 years was grossly discriminatory against African-Americans. For example, among many others, the Chairman of the Senate Judiciary Committee that reported out the new Act said that the Act was adopted because the old system was "one of the most notorious symbols of racial discrimination in the modern criminal justice system." 156 Cong. Rec. S.1683 (Daily ed. March 17, 2010). The Supreme Court also has said in this connection that the new law was adopted "because the public had come to understand that sentences embodying the 100-to-1 ratio as reflecting *unjustified race-based differences*." *Dorsey v. United States*, 132 S. Ct. 2321, 2328 (2010) (emphasis added). As my colleagues say in their opinion, the trial court itself said at Wherry's sentencing in 1997 that the court had no choice under the sentencing guidelines; it had to sentence Wherry to this "particularly harsh" sentence. In spite of the acknowledged racial discrimination underlying the crack sentencing scheme, our court can find no way to remedy the unfairness. It simply perpetuates the wrong by doing nothing. I think that the wrong can easily be corrected.

First, the majority's argument that Wherry's sentence is not "based on" the crack cocaine sentencing table found in § 2D1.1 defies common sense and ignores the reasons Wherry was before

11

a sentencing judge in the first place. The majority wants to dispense with the initial calculation of the offense based on Wherry's criminal history and amount of crack cocaine possessed and instead jump straight away to the career offender guidelines. For the majority, whether Mr. Wherry had 6 grams or 65 grams of crack is now inconsequential. Wherry was not punished for being a recidivist—he was punished for possessing crack cocaine with intent to distribute, then punished additionally for being a recidivist. The career offender provisions do not simply trump the rest of the sentencing scheme.

The majority's formalistic reading ignores the very basis of USSG § 4B1.1. USSG § 4B1.1 is not independent of § 2D1.1. The career offender section of the guidelines simply serve to enhance the punishment of an offender due to his criminal history, not to replace the punishment for dealing crack-cocaine. We must first look to that initial calculation — 32. The next step requires us to look at the punishment associated with that number — 10 years to life. The career offender provisions require us to look to the statutory maximum a person faces to determine the offense level. The only way to calculate that statutory maximum is to look at the amount of drugs associated with the conviction. In other words, without determining the quantity of crack cocaine, there is no statutory maximum and without knowing the statutory maximum, one cannot apply the career offender guidelines. These numbers are inextricably intertwined. Wherry's sentence is "based on" the crack-cocaine guidelines, which have now been lowered by the Fair Sentencing Act and Amendment 750. The first prong of § 3582(c)(2) has been met.

The majority's argument as to the second prong of § 3582(c)(2) is equally flawed because they base their reasoning, not on the language of the policy statement, but rather on their judicially

constructed rule that says no crack defendant can get a reduction if he receives a career criminal enhancement.

There is no statute or guideline that says that a defendant's sentence may not be reduced under the new Act because he had two prior felonies that labeled him a "career" criminal in the crack trade. Wherry received his 20-year sentence because of a combination of the old quantitative guideline provisions for selling 65 grams of crack and for having two prior felonies. There is no provision in any law anywhere that specifically says that such a long, discriminatory crack sentence may not be reduced simply because of a "career" criminal enhancement. My colleagues have quoted no such law to this effect. We are not required to so rule. A judicially-constructed rule such as the majority proposes serves to perpetuate the old racially discriminatory policy that Congress tried to change in the Fair Sentencing Act of 2010. Now thousands of African-American defendants like Wherry must remain in federal prisons for years without the intended redress. There is no purpose or policy behind such a judicially constructed rule, and my colleagues do not attempt to offer a reasoned justification. They just repeat the rule that, willy-nilly, a career criminal enhancement, for some unknown policy reason, eliminates the possibility of a reduction and serves to perpetuate the racial discrimination acknowledged in the new remedial statute. Under the new statute, designed it says in the preamble, to "restore justice," Wherry would have received a guideline sentence with the same enhancements of fourteen years rather than twenty, making him eligible for release two years ago. Why keep him in prison now for four more years? It makes no sense, preserving injustice instead of "restoring justice."